UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEWART E. PREBLE, | : | CIVIL NO. 3:08-CV-0292 |
| | : | |
| Plaintiff | : | (Judge Munley) |
| | : | |
| v. | : | (Magistrate Judge Smyser) |
| | : | |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of | : | |
| Social Security, | : | |
| | : | |
| Defendant | : | |

**REPORT AND RECOMMENDATION**

The plaintiff has brought this civil action under the authority of 42 U.S.C. § 405(g) to obtain judicial review of the decision of the Commissioner of Social Security denying her claim for Social Security disability insurance benefits (DIB) and Social Security supplemental security income (SSI).

On October 5, 2005, the plaintiff, Stewart Preble, applied for disability insurance benefits and supplemental security income. He claimed that he became disabled on April 13, 2004, due to left sciatica, hip surgery and low back pain. (Tr. 13, 27, 284). His claim was initially denied. (Tr. 11, 27-30). The plaintiff filed a request for a hearing, and a hearing was held before an administrative law judge (ALJ) on June 7, 2007. (Tr. 11, 31, 280-300).

At the June 7, 2007 hearing, the plaintiff, represented by counsel, and a vocational witness testified. (Tr.

282-300).  The plaintiff testified that he was born on May 9, 1969 and was thirty-eight years old at the time of the ALJ hearing.  (Tr. 283).  The plaintiff completed high school.  (Tr. 283).  He has past work relevant experience as a painter and an assembler.  (Tr. 290-91).

        The plaintiff testified that he has trouble lifting anything over ten pounds, sitting and standing for prolonged periods of time, walking more than 300 feet, and taking care of his personal needs.  (Tr. 287-89).  Due to the pain he experiences, the plaintiff has difficulty concentrating, has had anxiety attacks, and has been treated for depression.  (Tr. 290). The plaintiff takes medication and uses a TENS unit to treat his symptoms.  (Tr. 289, 290).  The plaintiff uses a cane to walk on bad days.  (Tr. 293).

        During the day, the plaintiff watches television, eats breakfast, lays on the couch, and checks the mail.  (Tr. 288).  The plaintiff has to lie down during the day due to his pain.  (Tr. 287-88).  He can cook quick meals and goes to his parents' house for dinner most nights.  (Tr. 288).  The plaintiff does not entertain visitors, visit friends, nor does he go out to dinner, church, social activities or the movies.  (Tr. 291).

        According to the Dictionary of Occupational Titles, the vocational witness identified the plaintiff's past work as a route salesman as semi-skilled work at the medium exertional level, and the auto parts worker/salesperson position as semi-

2

skilled work at the heavy exertional level. (Tr. 295-96).  The full service center manager/assistant owner position was classified as skilled work at the medium exertional level.  (Tr. 296).  The shipping/receiving/fabricator position was classified as skilled work at the heavy exertional level.  (Tr. 296).  The quality inspector-television tubes position was classified as unskilled work at the light-medium exertional level.  (Tr. 297).

        The ALJ asked the vocational witness to hypothetically consider an individual with the claimant's same age, education and vocational background who can occasionally lift ten pounds, frequently lift less than ten pounds, can stand and walk for at least two hours in an eight hour work day, can sit for about six hours in an eight hour work day, can occasionally climb ramps and stairs, and can occasionally stoop, kneel, crawl and crouch.  (Tr. 294).  The vocational witness testified that such an individual would be able to perform work as a general cashier, assembler, telephone receptionist and telephone solicitor-non sales.  (Tr. 295).  The vocational witness stated that the plaintiff would not be able to perform his past relevant work as a route salesman and auto parts worker/salesperson.  (Tr. 295).

        The ALJ then asked the vocational witness to consider the same hypothetical individual who cannot sit for any period of time, cannot stand for any period of time, is unable to work an eight hour day because of the need to lay down, even with a sit/stand option, and is limited to lifting ten pounds.  (Tr.

3

298).  The vocational witness stated that such an individual
would not be able to sustain work for an eight-hour day.  (Tr.
298).

On September 17, 2007, the ALJ issued a decision
denying the plaintiff benefits.  (Tr. 11-17).  The Appeals
Council denied the plaintiff's request for review, making the
ALJ's decision the final decision of the Commissioner.  (Tr. 4-
6).

The plaintiff filed his complaint with this court on
February 14, 2008.  (Doc. 1).  The defendant filed an answer to
the complaint and a copy of the administrative record on May 2,
2008.  (Docs. 6, 7).  Pursuant to Local Rules 83.40.4 and 83.40.5
and the court's Order of February 15, 2008, the plaintiff filed
his brief on August 15, 2008 and the defendant filed his brief on
September 10, 2008.  (Docs. 10, 11).  No reply brief has been
filed.

If the Commissioner's decision is supported by
substantial evidence it must be affirmed.  42 U.S.C. § 405(g).
Substantial evidence means "such relevant evidence as a
reasonable mind might accept as adequate to support a
conclusion."  *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)
(quoting *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995).
Substantial evidence is more than a mere scintilla of evidence
but less than a preponderance.  *Brown v. Bowen*, 845 F.2d 1211,
1213 (3d Cir. 1988).

4

A single piece of evidence is not substantial evidence if the Commissioner ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).  However, in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the decision] from being supported by substantial evidence." *Consolo v. Federal Maritime Comm'n*, 383 U.S. 607, 620 (1966).

To facilitate review of the Commissioner's decision under the substantial evidence standard, the Commissioner's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).  Conflicts in the evidence must be resolved and the Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Id.* at 706-707.  In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole. *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir. 1981).

The Commissioner has promulgated regulations creating a five-step process to determine if a claimant is disabled.  The Commissioner must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's

5

impairment meets or equals a listed impairment; (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work. *See* 20 C.F.R. § 404.1520 and 20 C.F.R. § 416.920.

The disability determination involves shifting burdens of proof. The initial burden rests with the claimant to demonstrate that she is unable to engage in her past relevant work. If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. *Mason*, 994 F.2d at 1064.

In this case, the ALJ determined that the plaintiff has not engaged in substantial gainful activity since the alleged onset date, that he has a severe impairment, that his impairments alone or in combination do not meet or equal the requirements of any listed impairment, and that he is unable to perform any of his past relevant work. (Tr. 13-16). The ALJ further determined that the plaintiff has the residual functional capacity to perform a range of mildly limited sedentary work. (Tr. 13-17).

On the basis of these findings, the ALJ found the plaintiff not to be disabled.

The plaintiff argues that the ALJ erred in failing to give appropriate weight to the opinion of his treating physician,

6

Matthew Brand, M.D., in failing to point to contradictory medical evidence in rejecting Dr. Brand's opinion, and in finding that he was not fully credible.

The plaintiff first argues that inadequate weight was assigned to Dr. Brand's medical opinion.  The plaintiff contends that the ALJ rejected Dr. Brand's opinion without pointing to contradictory medical evidence.  The plaintiff states that Dr. Brand's opinion that he was totally disabled is entitled to controlling weight as a treating source opinion.  (Doc. 10 at 20-23).

An ALJ must accord treating physicians' reports great weight, especially "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Plummer*, 186 F.3d at 429 (quoting *Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir. 1987)); *see also Adorno v. Shalala*, 40 F.3d 43, 47 (3d Cir. 1994); *Jones v. Sullivan*, 954 F.2d 125, 128 (3d Cir. 1991); *Allen v. Bowen*, 881 F.2d 37, 40-41 (3d Cir. 1989); *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir. 1988); *Brewster v. Heckler*, 786 F.2d 581, 585 (3d Cir. 1986).  Where the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason." *Plummer*, 186 F.3d at 429 (citing *Mason*, 994 F.2d at 1066).  The ALJ must consider the medical findings that support a treating physician's opinion that the claimant is disabled. *See Adorno*, 40 F.3d at 48.  In

7

choosing to reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical reports" and may reject "a treating physician's opinion outright only on the basis of contradictory medical evidence" and not due to his or her own credibility judgments, speculation or lay opinion. *Plummer*, 186 F.3d at 429; *Frankenfield*, 861 F.2d at 408; *Kent v. Schweiker*, 710 F.2d 110, 115 (3d Cir. 1983).

Dr. Brand stated the opinion on numerous occasions that the plaintiff is disabled from his regular duties or work due to left sciatica. (Tr. 171, 172, 175, 176, 178, 180, 184, 188, 192, 224, 225, 228, 236). On July 13, 2007, Dr. Brand completed a Complete Medical Report for the social security administration Office of Hearing and Appeals. (Tr. 273). Dr. Brand reported that the plaintiff has severe limitations due to left sciatica, including being unable to sit or stand for more than fifteen minutes at a time. (Tr. 275). Dr. Brand also reported that the plaintiff must lie down every two hours to relieve pain. (Tr. 275). The ALJ found that this opinion was not entitled to substantial weight because it was based primarily on the plaintiff's self-reports of pain. (Tr. 15-16).

On May 17, 2007, Dr. Brand completed a Medical Report stating that he observed positive straight leg raising test and foot drop, both due to left sciatica. (Tr. 229). Dr. Brand noted that he had been treating the plaintiff since June 2004 for his left sciatica. (Tr. 229). Dr. Brand found that the plaintiff could occasionally lift up to twenty pounds,

8

occasionally carry up to ten pounds, frequently reach, push, and pull with his right hand, as well as his left, sit or stand for no more than thirty minutes at a time, continuously use his right foot, but only occasionally use his left foot.  (Tr. 231).  The plaintiff argues that the limitations contained in both of Dr. Brand's reports warrant a finding of disability.  (Doc. 10 at 22).

Dr. Brand has consistently reported positive straight leg raising tests, ranging from "mild" to "marked", throughout his treatment of the plaintiff.  (Tr. 168, 169, 174, 177, 179, 187, 189, 226, 227, 228).  On March 10, 2006, Dr. Brand reported that the plaintiff had a full work up by neurosurgeon Dr. Kung, including a lumbar myelogram in the upright position, that revealed no evidence of disc herniation.  (Tr. 200-01, 228).  Dr. Brand reported that there is no surgical option for the plaintiff, as he does not have a herniated disc and has had piriformis decompression.  (Tr. 228).  Dr. Brand stated that he has reached maximum medical improvement and has a "permanent partial disability."  (Tr. 228).

The ALJ noted that Dr. Brand, as well as several examining doctors, had opined that the plaintiff is disabled. (Tr. 15).  The ALJ, discounting and disregarding these opinions, noted that Dr. Brand's opinion, as well as the opinions of the other physicians, was offered in the worker's compensation context, in which there is a different definition of disability. (Tr. 15).  The ALJ also stated that the opinion that the

9

plaintiff is disabled is a legal issue reserved for the
Commissioner; therefore a medical opinion of disability cannot be
accorded particular weight.  (Tr. 15).  The ALJ found that the
restrictions that Dr. Brand had noted in his reports were
excessive in view of the objective medical findings, including
those of Dr. Brand.  (Tr. 15).

        The rejection of a doctor's opinion that a person is
disabled on the basis that it had been stated in the context of a
worker's compensation proceeding is not a reasonable finding
without a study of the differing standards involved in the two
proceedings and an explanation for the irrelevancy of the
findings made or opinions stated in the other proceeding.  Also,
since we are accustomed to seeing the Social Security disability
adjudications cite and rely upon doctors' opinions that a
claimant is not disabled, and sometimes upon the absence in
doctors' reports of any statement that a claimant is disabled, we
cannot readily see why the court should agree that it is a legal
issue when the doctor says the patient is disabled but not when
the doctor says "not disabled" or does not use the word
"disabled".

        The ALJ noted that a March 2005 MRI revealed
degenerative facet arthritis at L4-5 that was interpreted as mild
and only of questionable clinical significance.  (Tr. 14, 144).
An electrodiagnostic study in January 2005 evidenced mild
neuropathy.  (Tr. 14, 182).  A repeat electrodiagnostic study in
2007 revealed slight slowing in the right peroneal motor response

10

that was essentially normal.  (Tr. 15, 272).  The ALJ noted that
multiple positive straight leg raising tests, recorded by several
physicians, were "just mildly positive."  (Tr. 15).  The ALJ
noted that although physical examinations revealed abnormal
sensation in the left lower extremity, they did not follow any
particular nerve distributions.  (Tr. 15).

        The ALJ does not adequately support the conclusion
that Dr. Brand's opinion is based on limited clinical findings.
*See Plummer,* 186 F.3d at 429 ("The ALJ must consider all the
evidence and give some reason for discounting the evidence she
rejects.").  *See also Wier v. Heckler*, 734 F.2d 955, 961 (3d Cir.
1984) (The ALJ must explicate the analysis upon which he bases
his ultimate decision, especially where he is rejecting the
testimony of the claimant's treating physician or allegations of
intractable pain) (citations omitted).

        The ALJ accorded substantial weight to the opinion of
a consultative examiner in 2005, which was adopted by the
Disability Determination Service adjudicator in assessing the
plaintiff's residual functional capacity.  (Tr. 16).  The
consultative examination was conducted on December 5, 2005 by
Pranae Datta, M.D.  (Tr. 196-99).  Dr. Datta reported an abnormal
gait.  (Tr. 197).  The plaintiff limped, drug his left foot while
walking, and appeared to be in pain while walking.  (Tr. 197).
The plaintiff walked on heels and toes with great difficulty and
rose from a chair with difficulty.  (Tr. 197).  Dr. Datta
indicated that the plaintiff had full range of motion of both

hips and that left hip motion causes hip pain.  (Tr. 198).  The plaintiff had no limitations with upper extremities for fine and gross motor activities and there were mild to moderate limitations for prolonged sitting, standing, walking, and climbing.  (Tr. 198).  It was noted that the plaintiff should avoid bending and perform no heavy lifting or carrying.  (Tr. 198).  Dr. Datta diagnosed the plaintiff with low back pain "probably secondary to herniated disk."  (Tr. 198).

The ALJ noted that Dr. Datta's opinion was consistent with the physician's own observations and with the objective evidence as a whole.  (Tr. 16).  However, the ALJ fails to explain how these findings, made two years before the hearing, are consistent with the record.  Dr. Datta examined the plaintiff only once, whereas Dr. Brand and other physicians, who reported the plaintiff disabled due to left sciatica, examined the plaintiff over three years.  Dr. Datta's opinion was entitled to less weight than it would have if he treated the plaintiff.  *See Adorno*, 40 F.3d at 47("In considering a claim for disability benefits, greater weight should be given to the findings of a treating physician than to a physician who has examined the claimant as a consultant.").

The ALJ does not demonstrate how Dr. Datta's one-time assessment is based on greater clinical findings than the opinion of Dr. Brand, the treating physician, and the other corroborative medical opinions of record.  The ALJ did not properly discuss the medical opinions of record and often made vague references such

12

as "[s]everal of the doctors who examined the claimant, including Dr. Brand. . .have opined that the claimant has lower functional capability than the residual functional capacity established herein." (Tr. 15).  The ALJ fails to specifically discuss the opinions of the several doctors and Dr. Brand who reported that the plaintiff was disabled.

The ALJ failed to afford adequate weight to the opinion of Dr. Brand and the other treating and examining sources of record.

The plaintiff's second contention of error is that the ALJ erred in finding that he was not entirely credible.

"[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Commissioner of Social Sec.*, 127 F.3d 525, 531 (6th Cir. 1997); *see also Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991) ("We defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility.")."  *Frazier v. Apfel*, 2000 WL 288246 (E.D. Pa. 2000).

The ALJ found that the plaintiff's sciatica could reasonably be expected to cause "some persistent discomfort in the lower back and left leg, the objective findings have

13

generally been too mild since at least October 2004, less than 12 months after the injury, to reasonably account for the extent of restriction alleged." (Tr. 14).  The ALJ does not point to specific statements of the plaintiff that are not credible.  He stated that the plaintiff alleges lower back pain and left leg sciatica with weakness that prevent him from lifting or carrying any weight, walking without limping, dragging his left foot and falling frequently, standing or sitting for more than 15 minutes at a time, bending to pick up objects from the floor, or ascending even one flight of stairs without great difficulty. (Tr. 14).  While the ALJ acknowledged medical support for the plaintiff's symptoms and found that the symptoms could be caused by the condition supported by the objective medical evidence, the ALJ used his own medical expertise to say that there is not medical support for the symptoms.  Third Circuit law precludes the ALJ from deciding a case based on his own medical opinion. *Plummer*, *supra*.  "[W]hile there must be objective medical evidence of some condition that could reasonably produce pain, there need not be objective evidence of the pain itself."  *Green v. Schweiker*, 749 F.2d 1066, 1071 (3d Cir. 1984).

The plaintiff testified that he has trouble lifting more than ten pounds, sitting and standing continuously, walking 300 feet or more, and taking care of his personal needs.  (Tr. 287-89).  The plaintiff takes medication for pain, uses a TENS unit, and uses a cane to walk on bad days.  (Tr. 289, 290, 293). The plaintiff testified that he watches television, lies on the couch, changes positions and checks the mail during the day.

14

(Tr. 288).  The plaintiff can only cook quick meals that do not require him to stand for a long time and he does not go out socially.  (Tr. 288, 291).

On his November 2005 disability questionnaire, the plaintiff reported that he needs assistance taking care of his personal needs.  (Tr. 74).  He stated that his wife helps him with his pants and shoes, and also in the shower, where he must sit in a chair.  (Tr. 74).  The plaintiff reported that he can care for his own hair, shaving, and feeding, but that his wife helps him in the bathroom.  (Tr. 75).  The plaintiff reported that he is not able to do housework or yard-work, and must stay in the car when he accompanies his wife shopping.  (Tr. 76).

The ALJ had said to the plaintiff's attorney at the hearing, as the attorney was developing evidence about the plaintiff's work history, presumably because a long and consistent work history is a factor to be considered as to credibility and disability[1], "Mr. Foster, I see that the claimant has a very steady record of work history so there is no reason to go into that."  (Tr. 291).  But the ALJ, who rejects the plaintiff's credibility, does not mention the plaintiff's work history in his Decision as evidence of the plaintiff's credibility.

---

[1] A strong and consistent work record is an important factor in assessing credibility as to pain and inability to work.  *Dobrowlsky v. Califano*, 606 F.2d 403, 409-10 (3d Cir. 1997).

15

The ALJ referenced the objective evidence of record.
As discussed above, a March 2005 MRI of the plaintiff's
lumbosacral spine revealed some degenerative facet arthritis at
L4-5.  (Tr. 14, 144).  The MRI was interpreted as mild and only
of questionable clinical significance.  (Tr. 14, 144).

The ALJ noted that a January 2005 electrodiagnostic
study was abnormal and revealed mild peroneal and tibial motor
neuropathy.  (Tr. 14, 182). The plaintiff treated with Dr.
Roeltgen, a neurologist, in March 2005, who reported that there
were no significant neurological deficits.  (Tr. 15, 141-43).
Dr. Roeltgen noted normal strength and inconsistency on "pin
assessment" of the left leg.  (Tr. 142).  The plaintiff had a
limp and was able to get on and off the exam table without
difficulty.  (Tr. 142).  Dr. Roeltgen reported a positive "flip
test" with straight leg raising with the patient sitting.  (Tr.
143).  There was no tenderness over the sciatic notch and very
marked tenderness on the left between L5 and S1 to deep
palpation.  (Tr. 143).  Dr. Roeltgen indicated that the
plaintiff's condition is consistent with an S1 nerve root
irritation without nerve root injury.  (Tr. 143).  Dr. Roeltgen
stated that he did not "believe that there is marked
embellishment" and "[a]lthough the patient does not have
significant neurological deficits, I believe he does have
significant disability."  (Tr. 143).  Dr. Roeltgen noted that the
plaintiff cannot sit, stand or walk for long periods of time,
cannot drive for significant periods of time, and cannot lift or
bend.  (Tr. 143).

16

The ALJ noted that Dr. Pardee conducted a repeat electrodiagnostic study in 2007 that was essentially normal, showing only slight slowing in the right peroneal motor response. (Tr. 15, 272).  Dr. Pardee reported upon physical examination that the plaintiff had full strength in his lower extremities when maximal effort was given and evidenced patchy and inconsistent decreased sensation below the left knee.  (Tr. 271). The plaintiff's reflexes were "2 and symmetric" at the knee and ankles on both sides and his plantar responses were flexor.  (Tr. 271).  A straight leg raising test was positive on the left side at about 25-30 degrees.  (Tr. 271).

The plaintiff underwent physical therapy in 2004. (Tr. 15).  The physical therapist reported that the plaintiff dragged his left foot during walking.  (Tr. 15, 98).  The physical therapist also reported absent left Achilles reflex on more than one occasion.  (Tr. 15, 98, 99).

The ALJ noted that the plaintiff only used a cane after the piriformis surgery in August 2005 and did not use a cane at the hearing.  (Tr. 15).  The ALJ noted that he did not observe any obvious lower extremity deficit at the hearing.  (Tr. 15).  The ALJ noted that there have been positive straight leg raising tests, but they have been "just mildly positive."  (Tr. 15).

The ALJ's implicit adverse credibility determination is not adequately explained or documented.

17

It is recommended that the appeal of the plaintiff be granted and that the case be remanded for further proceedings consistent with this report.


                                        **_/s/ J. Andrew Smyser_**
                                        J. Andrew Smyser
                                        Magistrate Judge


Dated:  October 27, 2008.