# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEWART E. PREBLE, : | No. 3:08cv292 |
|     Plaintiff, : | |
| : | (Judge Munley) |
| v. : | |
| : | |
| MICHAEL J. ASTRUE, : | |
| Commissioner of Social Security, : | |
|     Defendant : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Before the court are defendant's objections (Doc. 12) to Magistrate Judge J. Andrew Smyser's Report and Recommendation (Doc. 11) in this social security disability case, which proposes that we grant the plaintiff's appeal and remand the case to the Administrative Law Judge (ALJ). The matter has been fully briefed and is ripe for disposition.

**Background**

This case arises out of Plaintiff Stewart J. Preble's application for social security disability benefits. Plaintiff, who is presently 39 years old, first filed a claim for social security disability insurance on October 25, 2005. (See Application for Disability Insurance Benefits, Record (hereinafter "R.") at 39). He contended that he had become unable to work on April 13, 2004. (Id.). As the cause of his disability, plaintiff complained of left leg sciatica, surgery on a hip, and lower back pain. (Disability Report–Adult, R. at 56). He asserted that he could not stand for more

than 15-20 minutes, could not shift his weight to the right, bend down to the floor to pick anything up, and had difficulty walking. (Id. at 56-57). He moved slowly, and with a limp. (Id. at 57). These problems made lifting items impossible. (Id.). Plaintiff's condition made driving difficult, and he fell frequently while walking due to leg problems. (Id.). Nerve pain forced him to carry a portable device to ease that problem. (Id.). He alleged that he suffered these injuries after he fell onto his buttocks while making a delivery in February 2004. (Id. at 81). Plaintiff attempted to work for several weeks after his initial injury, but eventually found the pain too sharp to continue. (Id. at 115).

Plaintiff provided his work history to administrators evaluating his claim. Plaintiff had worked in a variety of jobs in the fifteen years before his alleged disability prevented further work. He worked as a quality inspector in a television plant, owned a retail fishing tackle business, fabricated truck and auto upholstery, managed an auto parts store, sold auto parts, and delivered uniforms and supplies such as rugs and towels to various businesses. (Id. at 65-71). All of these jobs had required frequent walking and standing from the plaintiff, and also forced him occasionally to lift 100 pounds or more, and lesser weights frequently. (Id.).

In his disability filings, plaintiff claimed that his physical condition presented great limits to physical activity. In a November 2005 filing, plaintiff complained that he could do little more during a day than move from his bed to the couch, where he was forced to lie on his back to limit sciatica pain. (Id. at 74). Plaintiff's pain made

sleeping difficult, as pain from lying in the wrong position caused him to wake up. (Id.). He had difficulty dressing himself, and was forced to set up a chair in the shower to bathe, as he could not climb in or out of the tub and feared slipping and falling in the shower. (Id.). Difficulties with standing for a long period of time made cooking impossible. (Id. at 75). Plaintiff had formerly enjoyed this activity. (Id.). An inability to bend over prevented plaintiff from engaging in house and yard work, and plaintiff found he could not shop because of his limitations. (Id. at 76). Though he formerly loved outdoor activities like hunting, fishing, gardening and riding all-terrain vehicles, plaintiff's pain had led him to cease all such activities. (Id. at 77).

The record contains a number of medical reports from various treating physicians and evaluators. Plaintiff's physical therapist, who treated him for sixteen weeks following his initial injury in April 2004, reported that plaintiff had shown no progress over this course of treatment, and that at his last visit he continued to drag his left foot while walking and had "absent" reflexes in his left achilles. (Id. at 98).

Dr. Matthew Brand, MD, began treating plaintiff for his pain and injuries here in question in 2004. On July 22, 2004, Dr. Brand examined plaintiff, diagnosing him with lower back pain and left sciatica. (R. at 189). He found that plaintiff had "some slight tenderness over the left paraspinal musculature and mildly positive straight leg raise on the right, positive on the left." (Id.). The doctor suggested a referral to pain management for an epidural steroid injection. (Id.). Plaintiff returned to Dr. Brand on October 15, 2004. (Id. at 187). The doctor found him "really not doing a whole lot

3

better." (Id.).  The steroid injection had not provided any relief.  (Id.).  An exam again showed a positive straight leg raise on the left and a mildly positive one on the right.  (Id.).  A magnetic resonance imaging (MRI) exam revealed some bulging disks, but Dr. Brand considered plaintiff's sciatic nerve more problematic. (Id.).  Plaintiff had not responded to conservative treatment, and Dr. Brand had begun to discuss surgical options with him.  (Id.).  On December 15, 2004, Dr. Thomas E. Borman, MD, examined plaintiff's back as a second opinion.  (Id. at 185). Dr. Borman found no surgical treatment of the spine necessary, finding "full and painless" hip rotation with "some guarding and ratcheting when I attempt to rotate his left hip."  (Id.).  Walking from heel to toe was somewhat difficult, and plaintiff had to hold onto the exam table to maintain balance.  (Id.).  Dr. Borman diagnosed "left sciatica neuronegative."  (Id.).

Dr. Brand's treatment of plaintiff continued into 2005.  (Id. at 183).  He saw plaintiff on January 4, 2005, reporting that plaintiff still suffered from "sciatica type pain from his left buttock posterior thigh, knee, posterior calf, and down to his foot." (Id.).  Plaintiff had a "negative straight leg raise" and "[g]ood internal and external rotation of his hips."  (Id.).  Still, Dr. Brand reported that he had informed plaintiff that "just the fact that he is not a surgical candidate does not necessarily mean he is not having a problem, just there is no obvious disc herniation causing his sciatica."  (Id.). Brand suggested that plaintiff undergo nerve conduction studies to help diagnose his problem.  (Id.).  After plaintiff underwent these studies, he saw Dr. Brand again.  (Id.

4

at 179-181).  Dr. Brand reported that the nerve conduction study showed "some abnormality in the peroneal nerve as well as the tibial nerve.  (Id. at 179).  He suggested that plaintiff undergo a closed MRI to determine whether disc damage was involved.  (Id.).  Examinations on March 18 and May 2, 2005 revealed that plaintiff continued to suffer similar symptoms.  (Id. at 177).  For the first time, however, Dr. Brand began to suspect that plaintiff suffered from piriformis syndrome, which could only be treated by "releas[ing] the piriformis to see how much improvement he gets."  (Id.).  Plaintiff was then treated by David L. Mevorach, M.D., who administered a "diagnostic nerve block."  (Id. at 153).  Plaintiff reported to Dr. Brand on May 26, 2005 that his symptoms had improved for three days after this procedure.  (Id. at 174).  Most of the discomfort returned within a few days, however.  (Id.).  After Dr. Brand explained the risks and potential rewards of surgery, plaintiff decided to have an operation.  (Id.).

Plaintiff saw Dr. Brand again on August 10, 2005 to discuss his impending operation.  (Id. at 173).  Dr. Brand explained that the operation did not guarantee improvement in plaintiff's condition.  (Id.).  At the same time, plaintiff reported that his condition worsened every day, and discomfort was spreading to the right side.  (Id.).  Understanding these risks, plaintiff determined to go forward.  (Id.).  On August 15, 2005, plaintiff was admitted to St. John's Hospital in Elmira, New York under the care of Dr. Brand.  (Id. at 147).  Dr. Brand performed this operation on August 15, 2005.  (Id. at 149).  Reports after the surgery indicate that plaintiff recovered fully

5

from the surgery, but that he got little to no relief from his pain. (Id. at 169). By October 5, 2005, plaintiff reported to Dr. Brand that he was in constant pain. (Id. at 168). Dr. Brand suggested that he continue with physical therapy in hopes of improvement. (Id. at 168).

When Dr. Brand saw plaintiff on March 10, 2006, he reported that another physician, Dr. Kung, had examined plaintiff and concluded that there was no evidence of disc herniation. (Id. at 228).[1] Plaintiff would not benefit from any surgical intervention. (Id.). Dr. Kung and Dr. Brand agreed that "Stewart is totally disabled." (Id.). Dr. Brand diagnosed plaintiff with a "piriformis decompression" and concluded treatment could best be achieved through activity modification and anti-inflammatory medications. (Id.). He had reached "maximum medical improvement" and had a "permanent partial disability." (Id.). Dr. Brand saw plaintiff again on December 12, 2006. He reported that he had rechecked plaintiff's left sciatica, and that his condition was "same as always." (Id. at 227). Dr. Brand was forced to explain that he was "not sure there are any other options at this time." (Id.).

Dr. Brand completed a medical report for the Social Security Administration in May 2007. (Id. at 229-233). He reported that he had treated plaintiff since June

---

[1] Dr. David C.Y. Kung, M.D., examined plaintiff on January 26, 2006. He reported that "[t]he straight leg raising test is positive on the left [and] patient is still able to walk on tiptoes and heels well without difficulty." (R. at 200). Dr. Kung diagnosed plaintiff as suffering from "left sciatica, cause to be determined." (Id. at 201). He reported that "[t]his gentleman's pain is increased by standing or sitting. There is a question of whether the disc will move out of place and irritate a nerve when he is in those positions." (Id.). The doctor recommended that "[t]he patient should be on temporary total disability for now." (Id.).

6

2004.  (Id. at 229).  Brand diagnosed plaintiff with left sciatica, primiforma syndrome. (Id.).  Plaintiff's response to treatment and prognosis were both "poor."  (Id.).  In assessing plaintiff's ability to work, Dr. Brand reported that he could occasionally lift up to twenty pounds, but could never carry more than ten.  (Id. at 230).  Even plaintiff's lifting of ten pounds could only be occasional.  (Id.).  Though plaintiff could frequently reach and push and pull with both hands and frequently handle and finger with them, he could not sit for more than thirty minutes at any one time.  (Id. at 231). He also could not stand for more than thirty minutes at a time.  (Id.).

Other physicians examined plaintiff in connection with his disability claims.  Dr. David P. Roeltgen, M.D., conducted an independent medical evaluation (IME) on March 7, 2005.  Dr. Roeltgen found that "patient does not have significant neurological deficits, I believe he does have significant disability.  He cannot sit, stand or walk for significant periods of time because of the severe discomfort.  I do not think he can drive for any significant periods of time.  He cannot lift our [sic] bend."  (Id. at 143).  Dr. Pranab Datta, employed by the Division of Disability Determination, examined plaintiff on December 5, 2005.  (Id. at 196).  Dr. Pratta reported that the "[c]laimant appeared to be in no acute distress."  (Id. at 197).  His gait was "abnormal," and he limped "a little and drags his left foot while walking." (Id.).  Plaintiff also "appeared to be in pain while walking."  (Id.).  Though plaintiff had difficulty rising from his chair and walking on his heels and toes, he did not need assistance to move around the operating room or to get on and off the exam table.

7

(Id.). Datta diagnosed plaintiff as suffering from "low back pain probably secondary to [a] herniated disk." (Id. at 198). Plaintiff's prognosis was "stable." (Id.). While plaintiff suffered no limitations in relation to his speech, hearing, or upper extremities for fine and gross motor activities, plaintiff could not lift or carry heavy objects. (Id.). He also suffered "mild to moderate limitations for prolonged sitting, standing, walking, and climbing." (Id.).

On June 7, 2007, plaintiff testified before Administrative Law Judge (ALJ) James Andres in a disability determination hearing. (Id. at 281-300). His testimony described a deterioration in his condition since his initial disability filing in the fall of 2005. Plaintiff testified that he had not worked since April 13, 2004. (Id. at 283). He stopped working on that date because his doctors told him he was no longer capable of doing so. (Id. at 284). Plaintiff also reported that he had undergone an operation to address his physical problems, but the piriformis release did not solve them. (Id. at 285). He continued to have pain when sitting or standing for any length of time; the pressure that such action put on his sciatic nerve sent pain up and down from his foot to his lower back. (Id. at 286). The pain was "constant" from his lower back through his hip and down to his left toes. (Id.). Plaintiff described this pain as "a sharp and shooting pain down your, a shooting pain up and down the leg. And there's a lot of tingling and numbness that goes on with that at the same time." (Id. at 289). The pain had led to vomiting, difficulty sleeping, anxiety attacks and treatment for depression. (Id. at 289-90). Pain medication offered only "minor"

relief.  (Id. at 290).  Plaintiff occasionally used a cane for balance when the weather was bad and he had to walk a fairly long distance.  (Id. at 293).  Doctors had also told plaintiff that his condition would not improve, even with more surgery.  (Id. at 286).

Plaintiff reported that his pain made sitting for any length of time at all impossible; he had to keep moving around to avoid pain.  (Id. at 287).  Standing also caused a problem, since "the weight of your body pushing down on that area of your hip and muscle where it, [sic] when you're walking or standing causes the pain to alleviate or not alleviate, to progress more and more the longer you're standing."  (Id.).  A job that allowed plaintiff to stand or sit whenever he chose would not allow plaintiff to work an eight-hour day, he reported, because "standing and sitting is what causes the pain."  (Id. at 287-88).  Plaintiff also reported that his doctor had restricted his lifting to ten pounds or less.  (Id. at 288).  Plaintiff spent his days watching television, eating, and doing simple tasks such as checking the mail.  (Id.).  Plaintiff was able to cook simple meals that took little time to prepare, but mostly relied on his parents for preparing meals.  (Id.).  He did not have any social life.  (Id. at 291).  Though plaintiff could do little to relieve his condition, he did possess an electrical "tens unit" that assisted in blocking nerve pain and provided periods of relief.  (Id. at 289).

The ALJ issued a decision in plaintiff's case on September 17, 2007.  (R. at 11-17).  The ALJ concluded that plaintiff was not disabled within the meaning of the

9

Social Security Act. (Id. at 11). The ALJ engaged in the five-step sequential process required by Social Security Administration regulations in making this determination. First, he found that the claimant had not engaged in substantial gainful activity since April 13, 2004. (Id. at 13). Next, the ALJ concluded that plaintiff suffered from the severe medically determinable impairment of sciatica. (Id.). In the third step of the analysis, the ALJ ruled that the plaintiff did not have an impairment of combination of impairments that qualified him as disabled under the statute. (Id. at 14). According to the ALJ, plaintiff's medical records did not reveal impairments significant enough to establish long-term limitations. (Id.). The ALJ then determined that plaintiff had a residual functional capacity of lifting and/or carrying up to 10 pounds occasionally and less than 10 pounds frequently, pushing and/or pulling commensurately with the lifting/carrying capabilities, standing and/or walking (with normal breaks) for a total of about six hours in an eight-hour workday; and performing non-exertional work-related activities that did not involve more than occasional bending, stooping, crawling, kneeling, or crouching. (Id.). This assessment qualified plaintiff for "a mildly limited range of sedentary work." (Id.). The ALJ found that plaintiff could not perform any past relevant work, but that he had skills transferable to sedentary work available to him in significant numbers in the national economy. (Id. at 16). Accordingly, the ALJ found that plaintiff was not disabled. The Social Security Appeals Council denied plaintiff's appeal of this decision, making the ALJ's decision the agency's final determination on the matter.

(Id. at 4-6).

Plaintiff then filed an appeal in this court. (Doc. 1). The case was referred to Magistrate Judge Smyser for pre-trial motions. After the parties briefed the issues in the case, Magistrate Judge Smyser issued a report and recommendation. (Doc. 12). The magistrate judge found that the ALJ had improperly rejected the opinion of Dr. Brand, plaintiff's treating physician. (Id. at 10). The ALJ had placed too much emphasis on the fact that Dr. Brand's opinion had been rendered in the context of a worker's compensation proceeding, and had not properly explained why the different standards employed in workers' compensation and social security disability proceedings should make Dr. Brand's findings unreliable. (Id.). The ALJ, the magistrate judge noted, had also reversed the usual proceedings of the Social Security Administration: normally, the SSA gives great deference to a treating physician when that physician reports no disability, but had here decided that a physician's report of a disability should be given little significance. (Id.). Magistrate Judge Smyser also found that the ALJ had placed too much emphasis on the opinion Dr. Datta, who had examined plaintiff only once, in December 2005. (Id. at 11). Other medical evidence compiled from plaintiff's treating physicians closer to the 2007 date of the hearing seemed to contradict Dr. Datta's finding of only small restriction's on plaintiff's ability to work. Magistrate Judge Smyser also found that the ALJ erred in finding that plaintiff lacked credibility in his complaints without providing adequate documentation and support for that finding. (Id. at 17). As

11

such, the Magistrate Judge recommended that the appeal be granted and the case remanded to the Commissioner for further proceedings. (Id. at 18).

The Commissioner filed objections to the report and recommendation. (Doc. 13). The parties then briefed their positions on the issues, bringing the case to its present posture.

**Jurisdiction**

The court has jurisdiction over the instant action pursuant to 42 U.S.C. § 405(g).[2]

**Legal Standard**

In disposing of objections to a magistrate judge's report and recommendation, the district court must make a *de novo* determination of those portions of the report to which objections are made. 28 U.S.C. § 636 (b)(1)(C); see also Henderson v. Carlson, 812 F.2d 874, 877 (3d Cir. 1987). This court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The district court judge may also receive further evidence or recommit the matter to the magistrate judge with instructions. Id.

When reviewing the denial of disability benefits, we must determine whether

---

[2]"Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow. Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides, or has the principal place of business." 42 U.S.C. § 405(g).

12

the denial is supported by substantial evidence. Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); Mason v. Shalala, 994 F.2d 1058 (3d Cir. 1993). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971).

The Social Security Act defines "disability" in terms of the effect a physical or mental impairment has on a person's ability to perform in the workplace. In order to receive disability benefits, a claimant must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Act further provides that a person must "not only [be] unable to do his previous work but [must be unable], considering his age, education, and work experience, [to] engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A); Heckler v. Campbell, 461 U.S. 458, 459-60 (1983).

In analyzing disability claims, the Commissioner employs a five-step sequential evaluation. 20 C.F.R. § 416.920. The initial three steps are as follows: 1) whether the applicant is engaged in substantial gainful activity; 2) whether the applicant has a severe impairment; 3) whether the applicant's impairment meets or

equals an impairment listed by the Secretary of Health and Human Services as creating a presumption of disability.   If claimant's impairment does not meet requirement 3, the claimant must demonstrate 4) that the impairment prevents him from doing past relevant work. See 20 C.F.R. §§ 404.1520, 416.920.  If the applicant establishes steps one through four, then the burden is on the Commissioner to demonstrate the final step:  5) that jobs exist in the national economy that the claimant can perform.  Jesurum v. Secretary of the U.S. Dept. of Health and Human Services, 48 F. 3d 114, 117 (3d Cir. 1995).

**Defendant's Objections**

The Commissioner raises two objections to the report and recommendation. The court will address each in turn.

**A. The Magistrate Judge's Finding that the ALJ Improperly Rejected Dr. Brand's Disability Opinion**

The Commissioner objects to the magistrate judge's finding that the ALJ improperly rejected Dr. Brand's opinion on plaintiff's disability.  No legal requirement exists, the Commissioner argues, for the ALJ to defer to a physician's disability diagnosis.  A determination that a person has a disability is a legal conclusion, and doctor's reaching such a conclusion are not entitled to deference.[3]  In addition, the

---

[3] The Commissioner also disputes the magistrate judge's finding that the ALJ improperly evaluated disability determinations by workers' compensation regulators.   The Commissioner argues that the ALJ did not need to defer to any such findings, since the Social Security Administration's regulations control in this situation, not workers' compensation agency findings.  The court finds that its decision on the Commissioner's objection regarding the weight given to Dr. Brand's opinion encompasses this objection as

14

Commissioner disputes the magistrate judge's conclusion that the ALJ did not give proper weight to Dr. Brand's findings and gave too much credit to Dr. Datta. Dr. Brand's findings, the Commissioner insists, were inconsistent with the medical record. The Commissioner contends that the magistrate judge erred in making this determination, since it is not the province of the magistrate judge to resolve conflicts in the evidence.

"A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observations of the patient's conditions over a prolonged period of time.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999)). If "the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.'" Id. (quoting Plummer, 186 F.3d at 429). If the treating physician opines that a plaintiff is disabled, "[t]he ALJ must consider the medical findings that support a treating physician's opinion that the claimant is disabled." Id. The ALJ "may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided." Plummer, 186 F.3d at 429.

---

well.

The court agrees with the magistrate judge that the ALJ did not give proper weight to the opinion of plaintiff's treating physician. Dr. Brand was plaintiff's treating physician, and he saw him over a long period of time. Dr. Brand suggested several methods for treating the plaintiff. He found that none of these methods were particularly successful, and by the end of 2006 had concluded that plaintiff would not improve from his present condition. He based his assessment of plaintiff's capacity to work on these years of treatment and observation, and the ALJ did not offer a cogent explanation for why he ignored these long observations in favor of opinions rendered in 2004 and 2005, at the onset of plaintiff's illness. The plaintiff's administrative hearing came in 2007, and the medical evidence indicates that his condition had deteriorated in the years between his initial injury and the disability determination. Relying on opinions rendered nearly two years previous to the disability determination does not provide substantial evidence for the ALJ's opinion. Indeed, the court concludes that the ALJ ignored the treating physician's opinion and instead extended his own judgment to determine how to apply findings from 2004 and 2005 to plaintiff's condition in 2007. In effect, the ALJ did not point to any medical evidence to contradict the medical opinions rendered by Dr. Brand in 2006. Because Dr. Brand continued to treat plaintiff until the time of his administrative hearing, the court agrees with the magistrate judge that the ALJ afforded Dr. Brand's medical opinion insufficient weight.

The Commissioner also contends that the magistrate judge erred in finding

that the ALJ gave improper deference to Dr. Datta's opinion on plaintiff's capabilities. Dr. Datta saw the plaintiff once, in December 2005, diagnosing him with low back pain probably secondary to a herniated disk.[4] (R. at 198). Datta found that plaintiff had only "mild to moderate limitations for prolonged sitting, standing, walking and climbing . . . [and could not engage in] heaving lifting or carrying." (Id.). The court notes that Dr. Brand, not Dr. Datta, was plaintiff's treating physician. Dr. Datta saw plaintiff only once, and before the continued deterioration and further (unsuccessful) medical treatment plaintiff underwent during 2006 and 2007. The ALJ's opinion does not explain why he rejected Dr. Brand's opinion in favor of Dr. Datta's, even though Dr. Brand had more data and experience on which to form his conclusions. The magistrate correctly found that the ALJ had improperly ignored "'opinions [that] reflect expert judgment based on a continuing observation of the patient's conditions over a prolonged period of time'" in favor of a single observation made long before the date of the disability determination in question. Morales, 225 F.3d at 317 (quoting Plummer, 186 F.3d at 429). For those reasons, the court will overrule the Commissioner's objections and adopt the magistrate judge's report and recommendation on this point.

**B. The ALJ's Credibility Finding**

The Commissioner also objects to the magistrate judge's finding that the ALJ

---

[4]This examination came after plaintiff's operation, but before the results of that operation had become especially clear.

did not explain adequately or document properly his finding that plaintiff was not fully credible. The ALJ, the Commissioner insists, did provide such explanation and documentation, finding that the record did not support plaintiff's claimed restrictions, since the medical records did not indicate anything worse than mild objective findings. In addition, the ALJ–contrary to the magistrate judge's findings–did not substitute his own medical expertise for plaintiff's doctors' knowledge. Instead, the ALJ pointed to the medical record in offering determinations about the plaintiff's condition. Finally, the Commissioner argues that the magistrate judge improperly concluded that the ALJ did not give proper weight to plaintiff's work history in assessing his credibility; the Commissioner points out that the ALJ accounted for this history, but reasonably concluded that plaintiff's subjective complaints did not match the objective medical record.

The court agrees with the magistrate judge on this matter. The ALJ found that plaintiff's complaints of lower back pain and left leg sciatica limiting his ability to walk, lift, stand or sit were not supported by the medical evidence in the record. The ALJ concluded that "the objective findings have generally been too mild since at least October 2004 . . . to reasonably account for the extent of the restriction alleged." (R. at 14). While the ALJ discussed some of the medical evidence in the record in connection with this opinion, he appears to have discounted information that established major limitations for the plaintiff, and did not consider at all plaintiff's extensive work history. Moreover, as related above, the ALJ ignored or discounted

18

the medical evidence created after 2005, and then concluded that the complaints made by plaintiff in his 2007 hearing were not supported by the medical record.

Similarly, the court agrees with the magistrate judge that the ALJ improperly failed to consider the plaintiff's long and consistent work history in making his credibility determination. Plaintiff had a history of working to support himself for at least fourteen years before his injury. Indeed, the evidence indicates that the plaintiff attempted to continue working even after he injured himself. He left work at his doctor's recommendation. Courts have concluded that "when the claimant has a work record like [plaintiff's] twenty-nine years of continuous work, fifteen with the same employer his testimony as to his capabilities is entitled to substantial credibility." Dobrowolsky v. Califano, 606 F.2d 403, 409 (3d Cir. 1979). Plaintiff has an extensive work history, and the ALJ did not discuss this work history in discounting plaintiff's subjective claims of pain and limitations. The magistrate judge properly found that this credibility determination was not supported by substantial evidence. The court will therefore overrule the objection on these grounds as well.

**Conclusion**

The court will overrule the Commissioner's objections and adopt the report and recommendation. The plaintiff's appeal will be granted and the case remanded to the Commissioner for proceedings consistent with this opinion. An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **STEWART E. PREBLE,** | : | No. 3:08cv292 |
| **Plaintiff,** | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| **MICHAEL J. ASTRUE,** | : | |
| **Commissioner of Social Security** | : | |
| **Defendant** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## ORDER

**AND NOW**, to wit, this 25th day of February 2009:

1) The report and recommendation of Magistrate Judge Smyser (Doc. 12) is hereby **ADOPTED;**

2) The defendant's objections to the report and recommendation (Doc. 13) are **OVERRULED**;

3) The plaintiff's appeal is granted; and

4) This Clerk of Court is directed to **REMAND** the case to the Commissioner for proceedings consistent with this opinion.

                        **BY THE COURT:**

                        **s/ James M. Munley**
                        **JUDGE JAMES M. MUNLEY**
                        **United States District Court**